United States District Court
Southern District of Texas
**ENTERED**
February 20, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# LAREDO DIVISION

| | | |
|---|---|---|
| CRISTOBAL PENA | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:23-CV-48 |
| | § | |
| DOMINIC MADRID, *et al.* | § | |

## ORDER

In this case, Plaintiff has sued Zapata County and two of its Sheriff's deputies ("Deputy Defendants") under 42 U.S.C. § 1983 and the Texas Tort Claims Act[1] ("TTCA") for injuries arising out of one of the Deputy Defendants' alleged assault of Plaintiff (Dkt. No. 5). The Deputy Defendants and the County have filed separate motions to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. Nos. 11, 19). The Court has carefully reviewed the arguments, record, and applicable authorities, and hereby **DENIES** the deputies' motion (Dkt. No. 11) and **GRANTS** the County's motion (Dkt. No. 19).

## I.    BACKGROUND

In reviewing a motion to dismiss, the Court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581–82 (5th Cir. 2020). Here, Plaintiff alleges the following.

---

[1] Texas Civil Practice and Remedies Code Annotated § 101.001 et. seq.

On February 18, 2023, Plaintiff Cristobal Pena, a welder, got into an argument at his residence with his children's maternal aunt and asked her to leave (Dkt. No. 5 at 6). When she refused, Mr. Pena called the Zapata County Sheriff's Department to request that they remove her from his property (*id.* at 7). Deputies Dominic Madrid and Carlo Garcia arrived at Mr. Pena's residence and Mr. Pena informed them that he was the homeowner and the person who called the police (*id.*). The deputies responded that they were detaining Mr. Pena and handcuffed him in front of his children (*id.* at 2, 7). Although Mr. Pena asked the officers why he was being restrained and what charges he faced, neither officer answered him, and instead placed him in the back of a squad car (*id.* at 7).

The officers then transferred Mr. Pena to a second squad car in order to transport him to jail (*id.*). As they did so, Mr. Pena insulted Deputy Madrid (*id.*). Mr. Pena explains that he was frustrated at being arrested on his own property after calling the police himself, without an explanation of the charges (*id.*). Deputy Madrid allegedly became enraged at the insult and assaulted Mr. Pena with his fists and elbows and slammed his head against the squad car (*id.*). Deputy Madrid then body slammed Mr. Pena against the ground headfirst and continued to punch him, while Deputy Garcia physically restrained Mr. Pena (*id.* at 7–8). Mr. Pena's three young daughters witnessed the entire incident (*id.* at 8).

After Deputy Madrid stopped assaulting him, Mr. Pena, bleeding, told the deputies that his hand, still in handcuffs, was severely broken (*id.*). The deputies then contacted their supervisor, who told them to seek immediate medical help for Mr.

Pena (*id.*). However, Deputy Garcia instead drove Mr. Pena to jail, where Sergeant Luis Martinez refused to accept him in his injured condition (*id.* at 8–9). Deputy Garcia then drove Mr. Pena for over an hour to the hospital, using his squad car instead of an available ambulance (*id.* at 9).

At the hospital, Deputy Garcia kept Mr. Pena in handcuffs for another hour while they waited for an emergency room bed to become available (*id.* at 10). All told, the deputies kept Mr. Pena in handcuffs for about four hours (*id.*). They did not file any charges against Mr. Pena (*id.*). And while Mr. Pena was at the hospital, Deputy Madrid had his car towed from his home to an impound lot, even though Mr. Pena had parked the car on his own property (*id.* at 11). Because of the injuries to his hand and elsewhere, Mr. Pena says he has struggled to continue working as a welder (*id.*).

Mr. Pena has sued both deputies under 42 U.S.C. § 1983 for violating his Fourth and Fourteenth Amendment rights, bringing counts of (i) false arrest; (ii) excessive force; (iii) unlawful property seizure; and (iv) denial of medical care (*id.* at 11–18). Mr. Pena further claims that Zapata County is liable under the TTCA § 101.021 for negligent and grossly negligent use of (i) motor-driven vehicles; and (ii) handcuffs (*id.* at 19–21). *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021. Both deputies and the County moved to dismiss Mr. Pena's claims in two separate motions (Dkt. Nos. 11, 19). Mr. Pena has timely responded to the motions (Dkt. Nos. 13, 20), and Defendants filed timely replies (Dkt. Nos. 18, 21).

## II.   LEGAL STANDARDS

### A. Dismissal Under Rule 12(b)(6)

To survive a motion to dismiss, a complaint must allege sufficient facts that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the alleged facts allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a motion to dismiss, the court must accept the complaint's well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. *Sewell*, 974 F.3d at 582.

### B. 42 U.S.C. § 1983 and Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotations and citations omitted). A court should only deny immunity if "existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted).

Further, qualified immunity is "immunity from suit rather than a mere

defense to liability" and should, therefore, be resolved early in the litigation. *Harlow*, 555 U.S. at 231–32; *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). Because an early resolution of qualified immunity protects officials from unwarranted liability and "costly, time-consuming, and intrusive" pretrial discovery, it may be decided on a motion to dismiss. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012); *Ruelas ex rel. Est. of Munoz v. Ford*, 402 F. Supp. 3d 344, 350 (E.D. Tex. 2019).

"To defeat a claim of qualified-immunity, the plaintiff has the burden to demonstrate the inapplicability of the defense." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017). But this is not a heightened standard: "[A] plaintiff must plead qualified-immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal*." *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023) (citing *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020)). "Therefore, in determining immunity, we accept the allegations of plaintiff's complaint as true." *Id.* (cleaned up).

To rebut a defendant's claim of qualified immunity, the plaintiff must show that the official's conduct: (1) violated the plaintiff's statutory or constitutional right, and (2) was objectively unreasonable in light of clearly established law at the time of the violation. *Id.* With respect to the second prong, the constitutional right "must be sufficiently clear to put a reasonable officer on notice that certain conduct violates that right." *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998). "The subjective intent of the officer is irrelevant, and the officer's knowledge of the law need not rise to the level of a 'constitutional scholar.'" *Id.* at 467 (citations omitted).

### C. Negligence Under the TTCA

A governmental unit[2] in Texas is liable for:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
>> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>>
>> (B) the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021. While the TTCA waives governmental immunity for some negligent conduct, it does not waive governmental immunity for claims arising out of intentional torts. *City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014). A plaintiff bears the burden of establishing a waiver of governmental immunity under the TTCA. *Harris Cnty. Flood Control Dist. v. Halstead*, 650 S.W.3d 707, 712 (Tex. App.—Houston [14th Dist.] 2022).

---

[2] Zapata County, as a political subdivision of Texas, is a governmental unit for purposes of the TTCA. *See Harris Cnty. v. Cabazos*, 177 S.W.3d 105, 109 (Tex. App.—Houston [1st Dist.] 2005).

### III.   DISCUSSION

#### A. False Arrest

Mr. Pena has sufficiently pleaded that the Deputy Defendants arrested him without probable cause. In doing so, he has also sufficiently alleged that the Deputy Defendants violated clearly established law and are, therefore, not entitled to qualified immunity at this juncture.

The Fourth Amendment's protection against unreasonable seizures includes seizures of a person. *California v. Hodari D.*, 499 U.S. 621, 624 (1991). An arrest is a type of Fourth Amendment seizure because it involves "the application of force to the body of a person with intent to restrain." *Torres v. Madrid*, 592 U.S. 306, 311 (2021). "[B]oth the Supreme Court's and [the Fifth Circuit's] precedent are abundantly clear that forceful seizures must be supported by probable cause." *Larpenter v. Vera*, No. 22-30572, 2023 WL 5554679, at *5 (5th Cir. Aug. 29, 2023) (citations omitted); *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 191–92, 197, 203 (5th Cir. 2009) (holding that officers violated the Fourth Amendment during a raid by removing three individuals from a nightclub without probable cause). In suits alleging false arrest, the plaintiff must prove the following to overcome qualified immunity: (1) the officer lacked probable cause to believe that the plaintiff was engaging in criminal activity, and (2) that the officer was objectively unreasonable in believing that such probable cause existed. *Bey v. Prator*, 53 F.4th 854, 858 (5th Cir. 2022) (per curiam).

Mr. Pena alleges that the Deputy Defendants lacked probable cause to arrest him because they did not see him break any laws, nor did they have reason to suspect

criminal activity (Dkt. No. 5 at 11–13). When the Deputy Defendants arrived at his home, Mr. Pena let them know that he was the homeowner and had called the police because he needed help removing the children's aunt from his home (*id.* at 7). But the deputies immediately detained him while they spoke with the aunt (*id.* at 2). At no point did they explain why he had been restrained or why "a by-then-uninvited guest should remain on the premises" rather than the homeowner (*id.* at 7).

The Deputy Defendants respond that the arrest was reasonable based on their investigative efforts (Dkt. No. 11 at 7). Specifically, they spoke with Mr. Pena and the children's aunt before placing Mr. Pena under arrest (*id.*). At no point, however, do they state what offense, if any, they believed he had committed (*see id.* at 6–7). For an officer to believe that probable cause to arrest exists, they must do more than merely investigate an incident, they must believe that the plaintiff was engaging in criminal activity. *See Bey*, 53 F.4th at 858.

Given the clearly established standards here, no reasonable officer could conclude that there was probable cause to arrest Mr. Pena. Construing the facts in Mr. Pena's favor, the reason why is simple—there is no evidence he committed a crime. Indeed, Mr. Pena was the person who called for law enforcement to assist him in the first place. After law enforcement arrived, he did not engage in any disruptive action that would justify arresting him. Because the Court is bound to take Plaintiff's well-pleaded allegations as true, the Deputy Defendants' motion to dismiss (Dkt. No. 11) is **DENIED** as to Mr. Pena's false arrest claim.

**B. Excessive Force**

Mr. Pena has sufficiently pleaded that the Deputy Defendants used excessive force twice. First, when Deputy Madrid assaulted and body slammed Mr. Pena as Deputy Garcia restrained him (*id.* at 7, 13–14). Second, when the deputies kept Mr. Pena handcuffed for four hours despite his visible hand injuries (*id.* at 14–15). In doing so, Mr. Pena has also sufficiently alleged that the Deputy Defendants violated clearly established law and are therefore not entitled to qualified immunity. The Court will address each use of force in turn.

*1. First Use of Force – Assault and Restraint*

To establish an excessive force claim under the Fourth Amendment, a plaintiff must show that he "suffer[ed] an injury that results directly and only from a clearly excessive and objectively unreasonable use of force." *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020). "[I]n *Graham v. Connor*, the Supreme Court outlined a few considerations that inform the need for force: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* at 332 (citing 490 U.S. 386, 396 (1989)).

Mr. Pena alleges that Deputy Madrid used excessive force because Mr. Pena was handcuffed and only verbally resisted his arrest (Dkt. No. 5 at 13–14). Because Mr. Pena admits noncompliance, Deputy Madrid argues that the use of force was "necessary to effectuate the arrest" (Dkt. No. 11 at 8–9). "While a suspect's refusal to comply with instructions may indicate that physical force is justified, officers must

also select the appropriate *degree* of force." *Bartlett*, 981 F.3d at 332 (cleaned up) (emphasis in original); *see also Galvan v. City of San Antonio*, 435 F. App'x 309, 311 (5th Cir. 2010) (explaining that the use of force was reasonable when it involved "measured and ascending responses" to a plaintiff's noncompliance). Because the amount of force is properly measured against the degree of noncompliance, "force may be less justified or unjustified when a suspect engages in 'passive resistance,' as opposed to 'active resistance.'" *Bartlett*, 981 F.3d at 333.

*Deville v. Marcantel* is instructive here. 567 F.3d 156 (5th Cir. 2009). Ms. Deville was pulled over for speeding, and, believing the stop was improper, she refused to get out of her vehicle and rolled up her window. *Id.* at 161. When Police Chief Marcantel arrived on the scene, officers smashed the window, threw her against the vehicle, and handcuffed her. *Id.* at 162. The district court found that the officers were entitled to qualified immunity on Ms. Deville's excessive force claim. *Id.* at 167. Applying the *Graham* factors, the Fifth Circuit reversed on the grounds that (1) The plaintiff had been stopped for a traffic violation, meaning "the need for force [was] substantially lower than if she had been suspected of a serious crime;" (2) "[T]here was no reason to believe that her actions posed a threat to the officers, herself, or to her grandchild [in the vehicle];" and (3) There was no indication that the plaintiff "would flee or use the vehicle as a weapon." *Id.*

Here, like in *Deville*, the *Graham* factors weigh in favor of Mr. Pena. The deputies did not assert *any* suspicion of criminal activity, perceived threat, or attempted escape on Mr. Pena's part. Additionally, Deputy Madrid had sufficient

notice that his conduct violated clearly established law. Precedent is clear: "[The Fifth Circuit has] repeatedly denied qualified immunity in cases in which officers face verbal resistance but no fleeing suspect." *Beroid v. LaFleur*, No. 22-30489, 2023 WL 3034706, at *4 (5th Cir. Apr. 21, 2023) (cleaned up); *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (holding that it was objectively unreasonable for an officer to slam plaintiff's face into a nearby vehicle when plaintiff "was not resisting or attempting to flee"); *Massey v. Wharton*, 477 F. App'x 256, 263 (5th Cir. 2012) (rejecting qualified immunity where plaintiff was arrested for disorderly conduct, was not a threat to officers, and was not attempting to flee).

Given this body of caselaw, no reasonable officer could conclude that body slamming and punching Mr. Pena when he was not physically resisting or attempting to flee would pass constitutional muster. Because Mr. Pena has sufficiently alleged that Deputy Madrid violated clearly established law, Deputy Madrid is not entitled to qualified immunity on Mr. Pena's excessive force claim.

Deputy Garcia's claim of qualified immunity must be analyzed independently. Mr. Pena alleges that Deputy Garcia restrained him as Deputy Madrid "body-slammed Mr. Pena to the ground headfirst and continued punching him" (Dkt. No. 5 at 7). As discussed above, it is clearly established that officers cannot resort to force if they face "verbal resistance but no fleeing suspect." *Tucker v. City of Shreveport*, 998 F.3d 165, 175 (5th Cir. 2021); *Beroid*, 2023 WL 3034706, at *4. Restraining someone is a use of force. *See generally Austin v. City of Pasadena, Tex.*, 74 F.4th 312, 330 (5th Cir. 2023).

11

In *Austin*, the plaintiff suffered an epileptic seizure in his jail cell and three officers responded by restraining him and using tasers. *Id.* at 319. A fourth officer then entered the plaintiff's cell and "immediately began assisting officers in restraining [him]." *Id.* at 331.  After the plaintiff died from cardiac arrest, his estate sued the officers involved for excessive force, but the district court dismissed his suit on qualified immunity grounds. *Id.* at 320, 327, 330. The Fifth Circuit reversed the district court's dismissal of plaintiff's excessive force claim against the fourth restraining officer, reasoning that the restraining officer was not entitled to qualified immunity because force is not justified "[i]f the suspect lacks any means of evading custody." *Id.* at 330. Thus, even though the other responding officers applied far greater force, "one could infer" that the fourth officer's actions in "applying force to, and doubly restraining" the plaintiff were also unreasonable.[3] *Id.* The same inference can be drawn against Deputy Garcia here.

### 2. Second Use of Force – Prolonged Handcuffing

Mr. Pena argues that the Deputy Defendants' use of handcuffs also constituted excessive force (Dkt. No. 5 at 14–15). Specifically, Mr. Pena alleges that the deputies

---

[3] Deputy Garcia also had a duty to intervene to prevent Deputy Madrid's clearly established unconstitutional conduct. *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Citing *Hale*, the Fifth Circuit in *Austin* also reversed the district court's grant of summary judgment for the officer defendants on the pretrial detainee's bystander liability claims. 74 F.4th at 330. The plaintiff argued that the fourth officer who assisted in restraining the plaintiff "should have voiced dissent to the officers' use of force, alerted a law enforcement supervisor of the officers' use of force, or physically pulled the officers away." *Id.* The fourth officer was therefore not entitled to summary judgment on plaintiff's bystander liability claim because "[a] jury could determine [the fourth officer] should not have immediately participated in using force." *Id.*

kept him in handcuffs with a broken hand for four hours, and Deputy Garcia refused to loosen or remove the handcuffs at the hospital (Dkt. No. 5 at 18, 20).

*Heitschmidt v. City of Houston* is instructive here. 161 F.3d 834 (5th Cir. 1998). Officers handcuffed Mr. Heitschmidt and seated him on a bar stool for over four hours while they searched his home. *Id.* at 836. Complaining of pain, he asked the officers to loosen his cuffs, which they refused to do (*id.*). Alleging that the prolonged handcuffing caused serious and permanent injury to his wrists, Mr. Heitschmidt sued the officers for excessive force under 42 U.S.C. § 1983. *Id.* at 836, 839–40. The district court dismissed the excessive force claim on qualified immunity grounds. *Id.* at 836. The Fifth Circuit reversed, holding that Mr. Heitschmidt "at least conceivably stated" an excessive force claim given that it was the officers who placed him in the painful restraints to begin with. *Id.* at 839–40. The officers were not entitled to qualified immunity because "[o]nce police secured the premises there was no justification for requiring Heitschmidt to remain painfully restrained." *Id.*

Here, as in *Heitschmidt*, Mr. Pena alleges that the four hours' handcuffing seriously injured his hand (Dkt. No. 5 at 20). He avers that the handcuffs exacerbated the injuries from his broken hand and damaged his hand strength and dexterity (*id.* at 5, 20). The Deputy Defendants do not address why it was necessary to keep Mr. Pena painfully restrained for four hours, including at the hospital. Accordingly, Mr. Pena has conceivably stated an excessive force claim against the Deputy Defendants based on their prolonged use of handcuffs.

### 3. *Summary*

Mr. Pena has sufficiently stated an excessive force claim based on both Deputy Defendants body-slamming, assaulting, and restraining him, and applying handcuffs for four hours in spite of his broken hand. Accordingly, the Deputy Defendants' motion to dismiss (Dkt. No. 11) is **DENIED** as to Mr. Pena's excessive force claim.

## C. Unlawful Seizure of Property

Mr. Pena alleges that Defendant Madrid unlawfully seized his car by having it towed while Mr. Pena was at the hospital (Dkt. No. 5 at 10–11). Defendant Madrid responds that the car was "presumedly" seized due to Plaintiff's arrest (Dkt. No. 11 at 10). But the car was not seized pursuant to a warrant, nor does Defendant Madrid offer any exceptions to the Fourth Amendment's warrant requirement justifying the impound (*see id.* at 9–10).

"Warrantless searches and seizures are per se unreasonable unless they fall within a few narrowly defined exceptions." *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002) (internal quotation marks omitted). The relevant one here is the "community caretaking" exception, which covers an officer's decision to impound a vehicle. *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976); *United States v. McKinnon*, 681 F.3d 203, 209 (5th Cir. 2012). "In considering whether this exception applies, [the Fifth Circuit's] constitutional analysis hinges upon the reasonableness of the 'community caretaker' impound viewed in the context of the facts and circumstances encountered by the officer." *McKinnon*, 681 F.3d at 208. It is reasonable to impound a vehicle to ensure that "the vehicle was not left on a public

street where it could have become a nuisance, and where it could have been stolen, or damaged." *Id.* at 209.

Here, Mr. Pena's vehicle was towed from his own home (Dkt. No. 5 at 4). Further, Defendant Madrid has not presented any facts suggesting that his decision to impound the vehicle was based on concerns it would become a nuisance, or be stolen or damaged (*see* Dkt. No. 11 at 9–10). Under such circumstances, clearly established law demonstrates that it was objectively unreasonable for Deputy Madrid to impound Mr. Pena's vehicle. *See McKinnon*, 681 F.3d at 209. Therefore, accepting Mr. Pena's well-pleaded allegations as true, the Court finds that he has sufficiently stated a claim for unlawful seizure of his vehicle. The Deputy Defendants' motion to dismiss Mr. Pena's unlawful seizure claim (Dkt. No. 11) is **DENIED**.

### D. Deprivation of Medical Care

Mr. Pena alleges that the Deputy Defendants unconstitutionally denied him medical care for his serious injuries (Dkt. No. 5 at 16–18).

"The Fourteenth Amendment right of a pretrial detainee to medical care is violated if an officer acts with deliberate indifference to a substantial risk of serious medical harm and resulting injuries." *Allen*, 65 F.4th at 747 (cleaned up). "[A] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Sims v. Griffin*, 35 F.4th 945, 949 (5th Cir. 2022) (quotation omitted); *Shaw v. TDCJ-CID*, 540 F. Supp. 2d 834 (S.D. Tex. 2008) (treating broken hand as a serious injury);  To show deliberate indifference, the plaintiff must show that officers (1) were "aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists," (2) that they "actually drew the inference," and (3) that they "disregarded that risk." *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020). In other words, an officer acts with deliberate indifference to a detainee's serious medical needs if the officer "refuse[s] to treat him, ignore[s] his complaints, intentionally treat[s] him incorrectly, or engage[s] in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Sims*, 35 F.4th at 951 (quotation marks and citation omitted). "The detainee need not die, or be permanently impaired, before an actionable claim arises for delayed emergency treatment; rather, a plaintiff may recover for pain suffered during a delay in treatment caused by deliberate indifference." *Austin*, 74 F.4th at 328 (citing *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422–23 (5th Cir. 2017)).

Mr. Pena argues that the Deputy Defendants were deliberately indifferent to his serious medical needs here because (1) they heard Mr. Pena complain of broken bones and saw his open wounds, (2) they inferred that there was a serious risk of harm, as evinced by their call to their supervisor asking how to proceed, and (3) they disregarded that risk by transporting Mr. Pena to the county jail rather than the hospital even though their supervisor ordered them to seek immediate medical help for Mr. Pena (Dkt. No. 5 at 16–18).

The Deputy Defendants respond that Mr. Pena has not sufficiently specified how the delay in medical treatment substantially harmed or exacerbated his injuries (Dkt. No. 11 at 11). The Court disagrees—Mr. Pena plausibly alleges that the

16

handcuffs exacerbated the injuries from his broken hand and damaged his hand strength and dexterity (*id.* at 5, 20). Further, "[Fifth Circuit] precedent allows recovery for pain suffered during a delay in treatment caused by deliberate indifference." *Murrell v. Zeon*, No. CV H-18-2626, 2019 WL 2343398, at *6 (S.D. Tex. June 3, 2019) (citing *Alderson*, 848 F.3d at 415). Mr. Pena was handcuffed during the ride to the jail, and the ride from the jail to the hospital, and alleges that he was in "excruciating pain and felt his hand getting worse as broken bones shifted during the ride" (Dkt. No. 5 at 9). The Deputy Defendants do not address why they deliberately, and against orders, drove Mr. Pena to the jail rather than the hospital. Thus, no legitimate objective for the delay is alleged or apparent.[4]

Therefore, taking Mr. Pena's well-pleaded allegations as true, the Court finds that he has sufficiently stated a claim for denial of medical care. Additionally, the Deputy Defendants had sufficient notice that their conduct violated clearly established law: "At least since 1987, it has been clear that pretrial detainees, a set that includes arrestees, are entitled to reasonable medical care unless the failure to supply that care is reasonably related to a legitimate governmental objective." *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 474 (5th Cir. 1996); *see also Kelson v. Clark*, 1 F.4th 411, 419 (5th Cir. 2021) (holding detainee plausibly pleaded deliberate

---

[4] *See Rhyne v. Henderson Cnty.*, 973 F.2d 386, 391 (5th Cir. 1992) ("Pre-trial detainees . . . must be provided with reasonable medical care, unless the failure to supply it is reasonably related to a legitimate government objective."). *Cf. Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003) (rejecting deliberate indifference claim where plaintiff "offer[ed] no evidence indicating that the officer intentionally delayed driving the ambulance in order to cause harm"); *McIntosh v. Smith*, 690 F. Supp. 2d 515, 529 (S.D. Tex. 2010) (granting qualified immunity where plaintiff failed to offer any evidence establishing that defendant "deliberately delayed either the call for medical aid or the arrival of medical aid").

indifference where paramedics allegedly noticed his visible injuries and failed to provide substantive treatment). Accordingly, the Deputy Defendants' motion to dismiss (Dkt. No. 11) is **DENIED** as to this claim.

### E. Zapata County's Motion to Dismiss Under the TTCA

Lastly, Mr. Pena alleges that Defendant Zapata County is responsible under the TTCA § 101.021 for negligent or grossly negligent use of (i) handcuffs, and (ii) motor-driven vehicles (Dkt. No. 5 at 19–21). *See* Tex. Civ. Prac. & Rem. Ann. Code § 101.021. The Court will address each claim in turn.

#### 1. *Handcuffs*

Mr. Pena concedes that when the Deputy Defendants handcuffed him, they committed an intentional tort which the County cannot be held liable for under the TTCA § 101.021(2) (Dkt. No. 20 at 4) (citing *Gordon*, 434 S.W.3d at 594 ("The actions of a police officer in making an arrest necessarily involve a battery, although the conduct may not be actionable because of privilege." (citation omitted))). And the crux of his claim relates to the injuries he suffered from Deputy Madrid's alleged assault. The TTCA excludes any waiver of governmental immunity for claims arising out of such intentional torts. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021(2), 101.057(2); *Cabazos*, 177 S.W.3d at 111.

However, Mr. Pena argues that after Deputy Madrid assaulted him, it was unreasonable and negligent for the Deputy Defendants to keep him in handcuffs for four hours (Dkt. No. 20 at 4). Mr. Pena argues that their failure to remove the

handcuffs exacerbated his injuries[5] (Dkt. No. 5 at 20). As already discussed, he also argues that the Deputy Defendants are individually liable for the prolonged handcuffing under an excessive force standard, not negligence (*id.* at 14–15). For that claim, he alleges that the actions of the deputies were "malicious, willful, or made with reckless or wanton disregard of Mr. Pena's constitutional rights" (*id.* at 15).

The County responds that Mr. Pena's injuries flow from the deputies' intentional torts, meaning they are not the result of negligence (Dkt. No. 19 at 4–5). Because all of the deputies' actions were intentional—the handcuffing, the alleged beating, and the transportation—the County argues that Mr. Pena's injuries were a consequence of intentional torts, rather than the result of negligence (Dkt. No. 21 at 3–4). The County is correct.

*Aguirre v. City of San Antonio* is instructive here. 995 F.3d 395 (5th Cir. 2021). In that case, the plaintiffs asserted that police officers used handcuffs negligently when they restrained the decedent arrestee, who died from asphyxiation as a result of his arrest. *Id.* at 402, 422. The plaintiffs argued that the City was liable under the TTCA § 101.021(2), contending that because the officers did not intend to kill the arrestee, their use of the handcuffs was negligent. *Id.* at 422. But the Fifth Circuit

---

[5] In making this argument, Mr. Pena cites *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540 (Tex. 2003) and *Dallas Cnty. Mental Health and Mental Retardation v. Bossley*, 968 S.W.2d 339 (Tex. 1998). These cases do not support his claim. In both cases, the Texas Supreme Court found that governmental immunity was not waived, and in neither case are the facts analogous to Mr. Pena's case. *See Whitley*, 104 S.W.3d at 543–44 (no nexus between use of bus and plaintiff's injuries where fellow bus passenger assaulted plaintiff, who suffered from cerebral palsy, after bus driver dropped them both off near each other when they had an altercation on the bus); *see also Bossley*, 968 S.W.2d at 343 (unlocked door in mental health facility did not proximately cause patient's death when patient escaped through it and committed suicide half a mile away after being chased by staff).

rejected their claim, because "the intentional tort of battery lies where the *offensive contact* is intentional, not the resulting injury." *Id.* (emphasis in original).

Here, Mr. Pena concedes that the handcuffing was a battery, but argues that injuries which later resulted from the failure to remove the handcuffs were the result of negligence. But because the offensive contact was intentional, any resulting injury was a battery, and is not subject to a negligence claim. *See, e.g., Gordon*, 434 S.W.3d at 592–93 (intentional physical injury is not required for a battery claim, so plaintiff's accidental injury resulting from overly tight handcuffing was a consequence of battery, not negligence); *see also City of Garland v. Rivera*, 146 S.W.3d 334, 337–38 (Tex. App.—Dallas 2004) (although officers did not intend to kill arrestee, their use of handcuffs, pepper spray, and a K-9 service dog in making the arrest was intentional conduct, not negligence, and thus sovereign immunity was not waived under the TTCA). Therefore, the County's immunity is not waived for this intentional tort.

### 2. Vehicles

Mr. Pena argues that Deputy Garcia acted negligently when he drove Mr. Pena to the hospital in his police car instead of an available ambulance (Dkt. No. 5 at 20–21). Mr. Pena says that the seat of the police car exacerbated his injuries because his broken hand pressed against it during the ride to the hospital (*id.*). The police car, he argues, had no safety feature as in an ambulance that could be used to restrain his hand in a medically safe manner (Dkt. No. 20 at 6) (citing *Overton Mem'l Hosp. v. McGuire*, 518 S.W.2d 528 (Tex. 1975)).

The County responds that Mr. Pena has simply alleged that he was injured because his hands were pressed against the backseat, and has not said how the police

car lacked necessary safety equipment (Dkt. No. 21 at 5). The County further argues that the non-use of an ambulance does not mean that the police car lacked an integral safety component, and that mere non-use of property does not waive immunity under § 101.021(2) (*id.* at 4–5) (citing *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994)). The County's arguments prevail.

Mr. Pena has not alleged that the backseat in the squad car was defective in any way that exacerbated his injuries. Rather, he alleges that the police car lacked an integral safety component, "namely a bed with guard rails" (Dkt. No. 20 at 7). In support, he cites a "long line of Texas cases"[6] that begins with *Overton Memorial Hospital*, in which a patient sued a city-owned hospital for injuries sustained in a fall from a bed that did not have guard rails (*id.*). 518 S.W.2d at 529. The Texas Supreme Court held that the hospital's immunity under the TTCA was waived, because the lack of safety rails on the hospital bed was a condition or use of tangible property which proximately caused the patient's injuries in his fall. *Id.*

But here, the squad car seat does not lack a safety feature analogous to a hospital bed lacking guard rails, and Mr. Pena has not alleged that it was otherwise

---

[6] *See* Docket Number 20 at 7 (citing *Overton Mem'l Hosp.*, 518 S.W.2d 528, 529 (Tex. 1975) (immunity waived where patient in city-owned hospital fell from a bed lacking guardrails)); *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 300 (Tex. 1976) (immunity waived where university failed to provide plaintiff with protective gear as part of his football uniform); and *Robinson v. Cent. Tex. MHMR Ctr.*, 780 S.W.2d 169, 171 (Tex. 1989) (immunity waived where government employees failed to provide epileptic patient with a life preserver and he drowned under their supervision). The cited cases in which immunity was waived involved a provision of items in which a safety feature normally associated with the items was lacking. *See Robinson*, 780 S.W.2d at 171 ("A life preserver was just as much a part of Robinson's swimming attire as the knee brace was part of the uniform in *Lowe*."). In contrast, police cars such as the one used here are not typically equipped with full-length beds for transporting medical patients. The failure to provide a full-length bed with guard rails in a police car thus does not support a waiver of immunity under the line of cases Mr. Pena relies on.

defective. To say that a police car is defective because it lacks a bed with guard rails, a feature of ambulances, not police cars, is a roundabout way of arguing that the deputies should have used an ambulance to transport Mr. Pena. This argument must be rejected, because it attempts to sidestep the rule that a municipality's immunity is not waived under the TTCA for non-use of property. *See Kassen*, 887 S.W.2d at 14 ("We have never held that a non-use of property can support a claim under the Texas Tort Claims Act.").

Further, for the municipality's immunity to be waived under the TTCA, an officer's use of the property must actually cause the alleged injury, not merely furnish a condition that made it possible. *Meyer v. Coffey*, 231 F. Supp. 3d 137, 151 (N.D. Tex. 2017) (citations omitted); *see City of Laredo v. Nuno*, 94 S.W.3d 786 (Tex. App.—San Antonio 2002) (to the extent arrestee was injured while being placed in a police car, the car did no more than furnish the condition that made the injury possible). Here, the seat was not used in a negligent manner that caused injury, so Zapata County's immunity is not waived under TTCA § 101.021. *Cf. City of Houston v. Nicolai*, 539 S.W.3d 378, 388–390, 392 (Tex. App.—Houston [1st. Dist.] 2017) (governmental immunity waived under TTCA where officer failed to secure detainee into patrol car with seatbelt, creating a fact issue as to whether he proximately caused her death after she was thrown from the car in an accident).

As for Deputy Garcia's decision to not transport Mr. Pena to the hospital in an available ambulance, "[t]he Legislature intended governmental units to be liable for negligently using harmful property, but not for failing to use it." *City of N. Richland*

22

*Hills v. Friend*, 370 S.W.3d. 369, 373 (Tex. 2012) (citing *Kassen*, 887 S.W.2d at 14). Thus, Deputy Garcia's failure to use the available ambulance cannot be the basis for a negligence claim against the County.

### 3. Summary

First, any injury Mr. Pena sustained from the deputies' continued use of handcuffs resulted from an intentional tort; second, the seat in Deputy Garcia's squad car did no more than furnish a condition that made further injury possible; and third, Deputy Garcia's non-use of the ambulance cannot be the basis of a negligence claim against the County. Because governmental immunity is not waived for such claims, the County's motion to dismiss (Dkt. No. 19) is **GRANTED**.

## IV. CONCLUSION

The Deputy Defendants' motion to dismiss (Dkt. No. 11) is hereby **DENIED**. Defendant Zapata County's motion to dismiss (Dkt. No. 19) is hereby **GRANTED**. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendant Zapata County from the case. Mr. Pena's claims against the Deputy Defendants (Dkt. No. 5 at 11–18) remain pending.

It is so **ORDERED**.

**SIGNED** February 20, 2024.

Marina Garcia Marmolejo
United States District Judge

23